### BUTLER & COMPANY *vs.* LAWSHE.

1. The verdict is supported by the evidence.
2. Where an iron press was sent by the vendor to the purchasers by a drayman, and the purchasers, or one of them, told the drayman where to deposit it in their yard, which was done, this would amount to a delivery and reception of the property.
3. That there had been an outstanding judgment which was a lien on the property sold, but which was paid off before a suit was brought and judgment rendered for the vendor against the vendees, was no injury to the latter; and, if the contract of sale was as testified to by the vendor and found by the jury, the vendees were bound to pay

4. If an iron press was agreed to be sold by the pound, and had to be weighed, the contract was executory; but if the price of the safe was fixed, and the delivery was perfect, the contract was executed. The plaintiff testified to the latter state of facts, and the jury so found.

5. Although a press may have been levied on under a judgment against the holder, yet if it was left in his possession, and he was allowed to use it and to deliver it free from the incumbrance of the judgment, by the attorney who was pressing the execution, and if by this arrangement the vendees under the defendant obtained a good title and possession free from the lien, thus extinguished before suit and verdict, they have no legal right to complain.

(*a.*) If the price was fixed and the delivery complete, the statute of frauds did not apply.

Judgment affirmed.

September 9, 1884.

JACKSON, Chief Justice.

[Lawshe brought complaint on an open account against Butler & Company for $105.00, as the price of a printing press sold by him to them. They pleaded the general issue, and that at the time of the sale there was a judgment outstanding against Lawshe.

On the trial, the evidence for the plaintiff was, in brief, as follows: He sold an old printing press to defendants for $105.00, and sent it to them by a drayman. Defendants showed the latter where to put it, and he left it where he was instructed.

The evidence for the defendants was, in brief, as follows: They did not buy the press, as claimed by plaintiff. They had several consultations with him about it. They told him that if he would have it weighed, they would give him one and one-half cents per pound for it. He said that it would weigh at least seven thousand pounds, and they replied that that would amount to $105.00. He did not have it weighed. After consultation among the partners, they notified plaintiff that they did not want the press. He said he did not know where to put it, as the old office was going to be torn down. One of defendants told him

v 74-23

that if he had no place to put it, he could send it down. This was done, and the same member of the firm showed the drayman where to put it, not as receiving it for defendants, but simply as a matter of accommodation to plaintiff. Defendants have never exercised any ownership over it, and it remains as it was deposited. At the time this occurred, there was an outstanding judgment against plaintiff, which was a lien on the press, and had been levied on it.

In rebuttal, plaintiff showed that he sold the press with the permission and consent of the attorney representing the *fi. fa.*, and that he had since paid off the *fi. fa.* in full.

The jury found for plaintiff $105.00, with interest from June 15, 1882, the date of the alleged contract of sale. Defendants moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law, evidence and the charge of the court.

(2.) Because the interest should not have been calculated from June 15, the trade not having been consummated until afterwards, if at all.

(3.) Because the court charged as follows: "That if you believe that the attorney of record for plaintiffs in *fi. fa.*, whose name you will see endorsed at the bottom of the *fi. fa.* put in evidence, gave the plaintiff, P. F. Lawshe, leave to sell said press, freed from the judgment lien, then I charge you, if there was a sale of said property, then a purchaser from said Lawshe would get it freed from the judgment lien," without further charging that the purchaser must have notice of the agreement.

(4.) Because the court charged as follows: "If you believe there was a sale of the printing press to the defendants, as insisted by plaintiff, then, if the defendants have been damaged by reason of the breach of warranty, or by reason of the judgment lien against said property, defendants could plead the amount of damages they have sustained in abatement of the purchase money; but if you

believe that the trade was not finally consummated, and there was no purchase of the property, as is insisted by defendants, then your finding should be for the defendants; and if you further believe that said sale was an executory sale, that is, something (was) to be done by either party before the sale was complete, and if plaintiff was to weigh the same (press), or deliver the same before said sale was complete, and the defendants, hearing of the judgment lien against said property, refused to accept the possession of the same before said press was weighed or delivered, then there was no sale, and your verdict should be for the defendants."

The motion was overruled, and defendants excepted.]